UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2017 MAY 23  AM 11: 50

CLERK

BY _____
DEPUTY CLERK

| | |
|---|---|
| WILLIAM VINCI, LINDA VINCI, AND TNF GEAR, INC., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| V.F. CORP., | ) ) |
| Defendant. | ) ) ) |

No. 2:17-cv-91

## COMPLAINT

The Plaintiffs, by and through counsel, complain against the Defendant as follows:

### The Parties

1. Plaintiffs William Vinci and Linda Vinci, husband and wife, are residents of Shelburne, Vermont. They are sole shareholders of Plaintiff TNF Gear, Inc.

2. Plaintiff TNF Gear, Inc. ("TNF") is a Vermont corporation with a principal place of business in Burlington, Vermont. TNF owns and operates a retail clothing store on Church Street in Burlington Vermont under the name The North Face Store @ KL Sport.

3. The Defendant, V.F. Corp. ("VF") is a Pennsylvania corporation with a principal place of business in Greensboro, North Carolina. Defendant is involved in the manufacture and sale of apparel. VF owns dozens of well-known clothing brands, including The North Face.

### Jurisdiction

4. The Court has jurisdiction of this matter under 28 U.S.C. § 1332, as complete diversity of citizenship exists between Plaintiffs and the Defendant, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

1

Facts

5.      In the year 2001, Plaintiffs Will and Linda Vinci began operating a clothing store in Shelburne, Vermont, selling exclusively The North Face brand products. Plaintiffs' store was unique in that it was the only independently-owned store in the country devoted exclusively to the sale of The North Face products.

6.      Plaintiffs moved their store to College Street in Burlington in 2005. In 2013, they moved the store to its current location at 90 Church Street, at considerable expense. Plaintiffs also established a successful web site, at www.klmountainshop.com, from which they marketed The North Face products to consumers across the country.

7.      Throughout the time Plaintiffs were engaged in selling The North Face products, Defendant and Plaintiffs operated pursuant to an agreement whereby Plaintiffs were licensed to use Defendant's trademarked merchandising materials, in exchange for the Plaintiffs' best efforts to sell and market exclusively The North Face products. Plaintiffs were obligated to abide by Defendant's marketing policies, including manufacturer approved pricing. The Defendant represented to Plaintiffs that these policies applied to all retailers selling The North Face products.

8.      The Vincis invested their life savings in the store, and devoted their full time to expanding the brand's popularity with Vermont consumers. Until the late fall of 2015, they were successful in this endeavor, and operated profitably every year they were in business.

9.      The North Face was positioned as a premium brand in the market for outdoor apparel, and The North Face products commanded a premium price. Early in 2015, the Plaintiffs placed their usual order for the winter of 2015/2016. As in previous years, Plaintiffs paid full wholesale price for the items they ordered, in an amount of approximately $1.2 million.

10. At no time in 2015 did anyone employed by or associated with VF inform the Plaintiffs that VF was changing its established approach to marketing The North Face products. In the late fall of 2015, after Plaintiffs had already purchased and accepted delivery of winter inventory, VF began offering the same clothing lines it had sold to Plaintiffs, at deep discounts, to third-party vendors. This was in violation of Defendant's own marketing policies.

11. As a result of Defendant's discounting activities, Plaintiffs found that they were being undersold, faced extraordinary numbers of returned items, and were unable to generate a profit on their inventory. Plaintiffs' on-line sales were particularly hard hit, declining to near zero, because comparison shoppers were not interested in purchasing items they could buy elsewhere for substantially less money.

12. Plaintiffs made Defendant aware of the fact that discounting activity was damaging their business. Defendant informed them that the discounters were acting in violation of Defendant's marketing policies, and that the discounters would be reigned in. Relying upon Defendant's assurances Plaintiffs continued their adherence to Defendants' long-established business model, including the rules governing pricing, which at least ostensibly remained in effect.

13. In the summer of 2016, Plaintiffs again submitted an order for winter inventory, and again paid full wholesale price for that inventory, in an amount of approximately $650,000. Yet again, in the fall of 2016, Defendant began offering the very same clothing lines it had sold to Plaintiffs to third-party retailers at substantial discounts. Yet again, Plaintiffs found that they were being undersold to such an extent that they were unable to remain profitable, and were losing large amounts of money.

14. Defendant did not inform Plaintiffs in advance that it would be discounting its products in a way that violated its own marketing policies. Nor did Defendant offer its products for sale to Plaintiffs at a discount beyond the wholesale pricing it had always made available. As a result, third-party retailers were able to undersell Plaintiffs.

15. As a result of Defendant's actions, the Vincis exhausted their savings and their credit, and in under 20 months saw their business go from a successful enterprise to the verge of failure.

16. The Vincis approached Defendant, offering to sell Defendant their business as a going concern. The Defendant countered with an unreasonably low price. Having taken steps that appear to have been purposefully calculated to drive Plaintiffs out of business, the Defendant has shown itself to be unwilling to purchase the business for anything close to what it is worth. At the same time, Defendant has expressly forbidden the Vincis from the selling the store to anyone else.

Count One
Breach of Contract

17. Plaintiffs restate and incorporate by reference the allegations set forth in paragraphs 1 through 16, above.

18. Every year, from 2001 to the present, Plaintiffs purchased inventory from Defendant for resale in Plaintiffs' Burlington, Vermont store. Every purchase order was an independent contract with its own attendant terms and conditions. In the aggregate these purchases formed a course of dealing between the parties, giving rise to settled expectations and an overarching contractual undertaking.

19. As a condition of their participation in the market as The North Face retailers, Plaintiffs were expressly obligated to follow and abide by Defendant's marketing policies,

including manufacturer approved pricing, which ostensibly applied to all retailers of The North Face products.

20. Defendant's enforcement of its marketing policies was material to the transaction, as it reasonably assured the Plaintiffs that they would not be undersold by competing retailers.

21. Defendant breached the terms of the parties' contract by failing to enforce its own marketing policies, and by offering its products to competing retailers at deep discounts. These competing retailers were thereby enabled to and did in fact undersell the Plaintiffs, so that the Plaintiffs were unable to earn any reasonable profit for their efforts, and found themselves losing money.

22. As a result of Defendant's breach of contract, Plaintiffs suffered money damages.

## Count Two
## Promissory Estoppel

23. Plaintiffs restate and incorporate by reference the allegations set forth in paragraphs 1 through 22, above.

24. By imposing marketing policies on prospective retailers of The North Face products, Defendant should reasonably have expected prospective retailer, such as the Plaintiffs, to invest in The North Face brand in the good faith belief that Defendant would enforce and adhere to its own marketing policies.

25. Plaintiffs, acting in reliance on Defendant's marketing policies, and Defendant's promise to enforce those policies, were induced to invest substantial amounts of time and money into the purchase and marketing of The North Face products, to their detriment.

26. Defendant not only failed to enforce its marketing policies but also encouraged and abetted others in flouting those policies by selling The North Face products to third-party retailers at substantial discounts that were not made available to Plaintiffs.

27. As a result of Defendant's breach of its own marketing policies, Plaintiffs were undersold to such an extent that they are on the verge of losing their business.

28. As a result of their reliance on Defendant's promises, Plaintiffs have suffered money damages, and injustice can only be avoided through enforcement of those promises.

Count Three
Breach of the Implied Covenant of Good Faith and Fair Dealing

29. Plaintiffs restate and incorporate by reference the allegations set forth in paragraphs 1 through 28, above.

30. Defendant was party to a contract or series of contracts with Plaintiffs, and thereby implicitly promised to act in good faith and in accordance with community standards of decency, fairness, and reasonableness in its dealings with Plaintiffs.

31. Defendant breached the implied covenant of good faith and fair dealing by selling inventory to Plaintiffs at full wholesale price and requiring Plaintiffs to comply with marketing policies that strictly regulated the retail price of that inventory, while at the same time selling that same inventory to others at a substantial discount that was not offered to Plaintiffs, all without informing Plaintiffs that it was so doing.

32. Defendant breached the implied covenant of good faith and fair dealing by knowingly underselling Plaintiffs, with the inevitable result that Plaintiffs would fail to generate any profit on their inventory, and that their previously successful business would fail.

33. Having for all practical purposes succeeded in driving Plaintiffs out of business, Defendant breached the implied covenant of good faith and fair dealing by offering to purchase Plaintiffs' business for only a small fraction of what it was worth, while at the same time forbidding Plaintiffs from accepting any competing offers for the purchase of their business.

34. As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiffs suffered money damages.

## Count Four
## Fraudulent Nondisclosure

35. Plaintiffs restate and incorporate by reference the allegations set forth in paragraphs 1 through 34, above.

36. Prior to 2015, The North Face was positioned as a premium brand in the outdoor apparel market. Defendant had established marketing and pricing policies that required retailers selling The North Face products to sell those products at premium prices.

37. From early 2015 through the winter of 2016-2017, Defendant changed its marketing policy, dumping large quantities of goods into the discount market. Even though Defendant was aware that Plaintiffs would be vulnerable to changes in its pricing model due to the fact that Plaintiffs exclusively sold The North Face products, Defendant never informed Plaintiffs that it was doing this until it was too late.

38. Based on the long-established and exclusive relationship between Plaintiffs and Defendant, Plaintiffs placed their trust and confidence in the Defendant. This, together with Defendant's superior knowledge concerning any changes in its pricing policies imposed a duty on Defendant to keep Plaintiffs informed of significant changes to those policies. Instead Defendant kept Plaintiffs in the dark while it implemented major changes to those policies. If Defendant had informed Plaintiffs of those changes in advance, Plaintiffs would not have sunk millions of dollars into inventory purchases and could have salvaged some value out of their business. As it was, Plaintiffs justifiably relied on the Defendants' failure to disclose these changes, in the reasonable belief that the parties' business relationship continued as before.

39. On information and belief, Defendant intended to mislead or defraud Plaintiffs so as to recapture the lucrative direct to purchaser sales that Plaintiffs maintained, not only through Plaintiffs' Church Street store but also through their website. As of early 2015, Defendant's own website had taken hold of a portion of the market, and Plaintiffs' website was competing with Defendant's website for sales. Defendant was able to effectively destroy Plaintiffs' Internet business by underselling to competing retailers, to Defendant's own benefit.

40. As a result of Defendants' fraudulent nondisclosure, Plaintiffs suffered money damages.

## Prayer for Relief

Wherefore the Plaintiffs respectfully request that the Court award them compensatory damages, punitive damages, interest, costs, and such other relief as to which the Court may find they are reasonably entitled.

Dated in Burlington, Vermont the 23rd day of May, 2017.

WILLIAM VINCI, LINDA VINCI, and TNF GEAR, INC.

By: /s/ David Bond

David Bond
Strouse & Bond, PLLC
2 Church St., Ste. 3A
Burlington, VT 05401
Tel. (802) 540-0434
david@strouse-bond.com

**JURY DEMAND**

Plaintiffs hereby demand trial by jury as to all claims so triable.

Dated in Burlington, Vermont the 23rd day of May, 2017.

                                            WILLIAM VINCI, LINDA VINCI,
                                            and TNF GEAR, INC.

By: _____
                                            David Bond
                                            Strouse & Bond, PLLC
                                            2 Church St., Ste. 3A
                                            Burlington, VT 05401
                                            Tel. (802) 540-0434
                                            david@strouse-bond.com