U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 FEB 21 AM 11:28

CLERK
BY HSe
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

WILLIAM VINCI, LINDA VINCI,  )
TNF GEAR, INC.,              )
                             )
    Plaintiffs,              )
                             )
        v.                   )   Case No. 2:17-cv-00091
                             )
V.F. CORP., VF OUTDOOR, LLC, )
                             )
    Defendants.[1]           )

**OPINION AND ORDER GRANTING DEFENDANT V.F. CORP.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, GRANTING IN PART AND DENYING IN PART PLAINTIFFS' REQUEST FOR JURISDICTIONAL DISCOVERY, DENYING AS MOOT V.F. CORP.'S MOTION TO DISMISS CLAIMS OF WILLIAM AND LINDA VINCI PURSUANT TO RULE 12(b)(6), AND GRANTING IN PART AND DENYING IN PART VF OUTDOOR'S MOTION TO DISMISS CLAIMS OF WILLIAM AND LINDA VINCI PURSUANT TO RULE 12(b)(6)**
(Docs. 10 & 11)

Plaintiffs William and Linda Vinci (the "Vincis") and TNF Gear, Inc. ("TNF") (collectively, "Plaintiffs") bring state law claims against Defendants V.F. Corp. ("VF") and VF Outdoor, LLC ("VF Outdoor") (collectively "Defendants") arising out of the purchase and sale of The North Face branded products. Pending before the court are Defendant VF's motion to dismiss Plaintiffs' claims against it for lack for personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Doc.10) and Defendants' motion to dismiss the Vincis' personal claims for failure to plead fraud with particularity and failure to state a claim under Fed. R. Civ. P. 9(b) and 12(b)(6) (Doc. 11).

The parties completed their briefing on August 17, 2017. The court heard oral argument on October 19, 2017, whereupon it took the pending motions under

---

[1] On January 12, 2018, the court transferred TNF Gear, Inc.'s claims against VF Outdoor, LLC to the United States District Court for the Northern District of California, Oakland Division pursuant to a binding forum selection clause.

advisement. Plaintiffs are represented by David E. Bond, Esq. Defendants are represented by R. Jeffrey Behm, Esq.

## I. The Allegations of the Amended Complaint.

The Vincis are husband and wife and the sole shareholders of TNF, a Vermont corporation with its principal place of business in Burlington. In 2001, TNF opened The North Face Store @ KL Sport in Shelburne, Vermont, which was later moved to College Street in Burlington and then to 90 Church Street in Burlington. TNF's store sold only The North Face branded apparel purchased at wholesale. In their Amended Complaint, Plaintiffs allege that until 2015, "The North Face was positioned as a premium brand[,]" and Defendants required them to adhere to manufacturer approved pricing plans that dictated correspondingly high retail prices. (Doc. 5 at 3, ¶ 11.) Plaintiffs allege that Defendants "represented to Plaintiffs that these policies applied to all retailers selling The North Face products." *Id.* at ¶ 9.

In early 2015, Plaintiffs placed their yearly order for winter apparel, totaling approximately $1.2 million in merchandise. In the fall of 2015, after Plaintiffs accepted delivery of those products, Defendants allegedly dramatically reduced their wholesale prices for sales made to third-party vendors. These third-party vendors, in turn, sold the discounted merchandise at significantly reduced retail prices to the general public, in violation of the marketing policies with which Defendants required Plaintiffs to comply. Plaintiffs claim that they were unable to compete with the significantly reduced prices, and that even if they could match them, they were barred from doing so pursuant to their promise to adhere to Defendants' manufacturer approved pricing plans. Plaintiffs allege that they fell "deeply into debt[,]" *id.* at 3, ¶ 13, and reported this to Defendants who promised to "reign[] in" the third-party discounters. *Id.* at 4, ¶ 14.

In 2016, Plaintiffs purchased $650,000 in winter apparel inventory, and in the fall of that year Defendants again allegedly offered the same apparel to third-party vendors at steep discounts. Plaintiffs allege that they were again substantially underpriced by other retailers and were unable to maintain profitability. "As a result of Defendants' actions, the Vincis exhausted their savings and their credit, and in under 20 months saw their

2

business go from a successful enterprise to the verge of failure." *Id.* at 4, ¶ 17. The Vincis claim they offered to sell their business to Defendants, but that Defendants refused to entertain a fair market value purchase.

On May 23, 2017, Plaintiffs filed this suit against VF, alleging breach of contract, promissory estoppel, breach of the implied covenant of good faith and fair dealing, and fraudulent concealment under Vermont common law. On June 19, 2017, Plaintiffs amended their complaint to include VF Outdoor as a Defendant, stating that VF Outdoor "is a wholly-owned subsidiary of VF. On information and belief, [VF Outdoor] is the owner of The North Face brand, and operates a division under the tradename, 'The North Face.'" *Id.* at 1, ¶ 4. The Amended Complaint includes a jury demand and seeks $5 million in damages.

On July 18, 2017, Defendants moved to dismiss all claims against VF for lack of personal jurisdiction, arguing that Plaintiffs have not established that VF has sufficient minimum contacts with Vermont to subject it to suit in this state. In support of their motion, Defendants included two affidavits, one from VF Outdoor's Senior Credit Manager Lisa Long and one from VF's Assistant Secretary and Assistant General Counsel Mark Townsend. Ms. Long avers that VF Outdoor is a wholly owned subsidiary of VF but that it is a "separate and distinct entity[.]" (Doc. 10-1 at 1, ¶ 2.) She further avers that VF "does not directly control day-to-day operations of VF Outdoor," that VF "has had no regular contacts or dealings with William or Linda Vinci or TNF Gear[,] Inc. in Vermont[,]" and that VF "has not directly shipped or sold The North Face branded products to any of the Plaintiffs in this case and has no agreement with Plaintiffs." *Id.* at 1-2, ¶ 3-4.

Mr. Townsend avers that VF "conducts business primarily through its many subsidiaries around the world[,]" but that VF Outdoor "independently designs, procures, markets and distributes branded outdoor and activity-based lifestyle apparel, footwear, and related products for the US market, including for The North Face brand." (Doc. 10-2 at 1, ¶ 3.) He further avers that VF "has few, if any, regular, direct contacts with persons in Vermont" and that VF "has not directly shipped or sold The North Face branded

3

products to any of the Plaintiffs in this case and has no agreement with Plaintiffs." *Id.* at 2, ¶ 4.

Plaintiffs opposed the motion to dismiss on jurisdictional grounds and included an affidavit from William Vinci, wherein he avers that "[t]hroughout the course of my dealings with VF Outdoor and VF[], and based on my review of publicly available information, I have never been able to tell where one business begins and the other ends." (Doc. 14-1 at 4, ¶ 11.) He further avers that "[p]ersonnel with whom I regularly interacted seemed to frequently switch jobs from one company to the other[,]" and that when he communicated with both VF and VF Outdoor employees, he uniformly received email replies from "vfc.com" addresses with signatures that "described the correspondent's affiliation as simply 'The North Face.'" *Id.* at 4-5, ¶ 11. Mr. Vinci also references a Fortune Magazine article published in February 2017 and attached to his affidavit which he characterizes as proof that VF "itself was responsible for the decision to clear extra unsold merchandise through outlet stores." *Id.* at 5, ¶ 14.

## II. Conclusions of Law and Analysis.

### A. VF's Motion to Dismiss for Lack of Personal Jurisdiction.

"In the absence of a federal statute specifically directing otherwise, and subject to limitations imposed by the United States Constitution, [courts] look to the law of the forum state to determine whether a federal district court has personal jurisdiction over a foreign corporation." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016) (citing Fed. R. Civ. P. 4(k)(1)(A) (federal courts may exercise personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located")); *see also Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) ("[T]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with federal law entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee") (alteration in original) (internal quotation marks omitted). "On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden

4

of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co.* at 566.

There are two types of personal jurisdiction: general personal jurisdiction and specific personal jurisdiction. A corporation is subject to general personal jurisdiction in a particular forum when "'the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Goodyear Dunlop Tires Operations., S.A. v. Brown*, 564 U.S. 915, 924 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)). For a corporation, "the paradigm forum for the exercise of general jurisdiction is . . . one in which the corporation is fairly regarded as at home." *Id.*

Specific personal jurisdiction, by contrast "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Id.* at 923-24 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). "As a rule in these cases, [the Supreme Court] has inquired whether there was 'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* at 924 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "[A] State may authorize its courts to exercise [specific] personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 923 (quoting *Int'l Shoe*, 326 U.S. at 316 (internal quotation marks omitted)). Thus, where a plaintiff asserts the court's specific personal jurisdiction over a defendant, the court must first determine if the defendant has sufficient minimum contacts to establish jurisdiction. Only if minimum contacts exist must the court then decide if the exercise of jurisdiction would be reasonable under the circumstances. *See Metro. Life Ins. Co.*, 84 F.3d at 567-68. As the Second Circuit has explained:

> [I]n resolving questions of personal jurisdiction in a diversity action, a district court must conduct a two-part inquiry. First, it must determine

5

> whether the plaintiff has shown that the defendant is amenable to service of
> process under the forum state's laws; and second, it must assess whether
> the court's assertion of jurisdiction under these laws comports with the
> requirements of due process.

*Ehrenfeld v. Mahfouz*, 489 F.3d 542, 547 (2d Cir. 2007) (quoting *Metro. Life Ins.*, 84 F.3d at 567).

In Vermont, state courts may exercise personal jurisdiction over a non-resident defendant "to the full extent permitted by the . . . Due Process Clause" of the Fourteenth Amendment. *State v. Atl. Richfield Co.*, 2016 VT 22, ¶ 10, 201 Vt. 342, 349, 142 A.3d 215, 220; *see also In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 38 (2d Cir. 2014) ("Vermont's long-arm statute reflects a clear policy to assert jurisdiction over individual defendants to the full extent permitted by the Due Process Clause.") (internal citation, footnote, and quotation marks omitted). As a result, "the first part of [the] inquiry—the interpretation of the Vermont law governing service of process—merges with the second part of the jurisdictional test: whether the court's exercise of personal jurisdiction over the defendant satisfies the requirements of due process." *Metro. Life Ins. Co.*, 84 F.3d at 567.

In this case, the Vincis concede that VF, a Pennsylvania corporation with a principal place of business in North Carolina, lacks sufficiently continuous and systematic contacts to subject it to "general" personal jurisdiction in Vermont. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction") (internal quotation marks, omissions, and alterations omitted). Plaintiffs maintain, however, that VF is subject to specific personal jurisdiction in Vermont.

Plaintiffs assert an agency theory of minimum contacts with respect to VF, contending that VF Outdoor "acted as the agent or alter ego of [VF]" when prices were reduced for third-party retailers in the fall of 2015 and 2016. (Doc. 14 at 2.) Plaintiffs reason that VF's alleged direction and control over VF Outdoor's marketing and pricing decisions constitute sufficient contacts with Vermont to support personal jurisdiction over VF Outdoor's parent company VF. Defendants counter that Plaintiffs have provided only

6

"conclusory allegations" of VF's control over VF Outdoor that "fail to make a prima facie showing that this [c]ourt has specific jurisdiction over [VF]." (Doc. 16 at 2.)

"Agency relationships[] . . . may be relevant to the existence of *specific* jurisdiction" because "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Daimler*, 134 S. Ct. at 759 n.13; *see also In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 531 (5th Cir. 2014) ("*Daimler* therefore embraces the significance of a principal-agent relationship to the specific-jurisdiction analysis, though it suggests that an agency relationship alone may not be dispositive."). In other words, "the commission of some single or occasional acts of the corporate agent in a state [may be] sufficient to impose an obligation or liability on the corporation[.]" *Int'l Shoe*, 326 U.S. at 318. This is true when "'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

> [W]here the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Id.* at 475-76 (internal citations and quotation marks omitted).

The Vermont Supreme Court has not squarely addressed agency-based specific personal jurisdiction, but its recent decisions continue to rely on the *Burger King* standard:

> Specific jurisdiction is satisfied when a defendant has "fair warning" that a particular activity may subject it to the jurisdiction of a state by virtue of the fact that the defendant "purposefully directed" its activities at residents of the forum state and that the litigation results from injuries arising out of or relating to those activities.

*Atl. Richfield*, 2016 VT 22, ¶ 14 (quoting *Burger King*, 471 U.S. at 472-73).

7

Plaintiffs point out that VF Outdoor, as the wholly owned subsidiary of VF, is presumably subject to its direction and control. With respect to specific jurisdiction, "[a] subsidiary[] . . . might be its parent's agent for claims arising in the place where the subsidiary operates, yet not its agent regarding claims arising elsewhere." *Daimler*, 134 S. Ct. at 759. The primary inquiry is whether the parent corporation "purposefully avail[ed] itself of a forum by directing its agents or distributors to take action there." *Id.* at 759 n.13.

In support of personal jurisdiction over VF through the imputed contacts of VF Outdoor, Plaintiffs point to Mr. Vinci's affidavit wherein he describes what he characterizes as overlap between VF and VF Outdoor. VF responds that Ms. Long's and Mr. Townsend's affidavits demonstrate VF Outdoor's independence from VF, which is not a party to any contract in Vermont and has no operations here. It contends that mere contact between VF employees and VF's subsidiary operating in Vermont is insufficient to establish personal jurisdiction in this state.

Plaintiffs' allegations of VF's general control and oversight of VF Outdoor misapprehend the relevant inquiry for specific personal jurisdiction. Where a plaintiff brings suit against a foreign corporation in federal court, the test for personal jurisdiction is whether "the litigation results from alleged injuries that 'arise out of or relate to'" the defendant's minimum contacts with the forum state. *Burger King*, 471 U.S. at 472 (quoting *Helicopteros*, 466 U.S. at 414). Accordingly, Plaintiffs must provide evidence that VF "'purposefully directed'" activities at Vermont, through VF Outdoor, in a manner that caused Plaintiffs' injuries. *Id.* (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). Allegations of generalized control of VF's subsidiary are insufficient to establish the requisite minimum contacts with Vermont for the purposes of this case. *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185-86 (2d Cir. 1998) (holding that generalized allegations of a parent corporation's direction and control of a subsidiary operating in the forum state were insufficient to establish specific personal jurisdiction over the parent).

The record does not reveal any specific actions taken by VF or directions provided that prompted VF Outdoor's price reductions for third-party vendors which is the conduct Plaintiffs allege caused their injuries. The only contract at issue is between TNF and VF Outdoor and it is VF Outdoor's alleged breach of it that is of issue. While Mr. Vinci's affidavit and the attached annual report demonstrate that VF and VF Outdoor appear to operate in close coordination, there is no admissible evidence that the pricing decisions at issue were made by VF which then directed VF Outdoor to implement them. *See Jazini*, 148 F.3d at 185-86 (concluding that allegations of overlapping personnel and statements in an annual report were insufficient to establish jurisdiction over a subsidiary's parent corporation).[2] Similarly, even accepting all well pled factual allegations as true, the Amended Complaint does not claim that VF directed the price reductions at issue, but merely attributes that conduct to "defendants" generally. While the Amended Complaint does allege that "Defendants were the apparent agents of one another[,]" (Doc. 5 at 2, ¶ 8), this claim "states no facts supporting that conclusion and does not constitute a prima facie showing of agency." *Jazini*, 148 F.3d at 184.

For the reasons stated above, Plaintiffs have failed to establish VF's minimum contacts with Vermont for the purposes of specific personal jurisdiction, and their claims against VF must be DISMISSED WITHOUT PREJUDICE on that basis. The court therefore does not address whether exercise of personal jurisdiction over VF would be fair and reasonable in the circumstances of this case. *See Jenkins v. Miller*, 983 F. Supp. 2d 423, 450 (D. Vt. 2013) ("The Court need not reach the issue of reasonableness with respect to those defendants that have not been shown to have minimum contacts with the forum"); *see also Metro. Life Ins. Co.*, 84 F.3d at 567 ("The court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's

---

[2] The Vincis do not ask the court to take judicial notice of the Fortune article attached to Mr. Vinci's affidavit. While the court may take judicial notice of the fact that the article was published, it cannot take judicial notice of the article's contents. *See Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("it is proper to take judicial notice of the fact that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents").

exercise of personal jurisdiction" before considering the reasonableness factors for specific personal jurisdiction).

To the extent that they are unable to show VF's direct involvement in the price reductions that form the basis of their claims, Plaintiffs request a "reasonable opportunity for discovery" to establish VF's role. (Doc. 14 at 4.) At oral argument, VF opposed any additional discovery. "A district court has wide latitude to determine the scope of discovery," *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008), and "discovery may be appropriate when a defendant moves to dismiss for lack of jurisdiction." *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93 (2d Cir. 1975). The court may, however, decline "to permit discovery [when] the plaintiff ha[s] not made out a prima facie case for jurisdiction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007).

Here, Plaintiffs' allegations, taken as true, do not establish a prima facie claim of jurisdiction. As a result, Plaintiffs' request for jurisdictional discovery is DENIED IN PART WITHOUT PREJUDICE. However, because the relationship between VF Outdoor and VF is an appropriate subject matter for discovery, Plaintiffs' request to conduct such discovery in the ordinary course is GRANTED. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"). Should Plaintiffs discover evidence establishing the court's specific personal jurisdiction over VF, they may seek leave to amend their Amended Complaint to add VF as a party on that basis.

### B. Defendants' Motion to Dismiss the Vincis' Claims in their Individual Capacities Under Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim.

Both VF and VF Outdoor assert that the Vincis' personal allegations against them are factually deficient and fail to state a plausible claim for relief and seek dismissal under Fed. R. Civ. P. 9(b) and 12(b)(6). Because the court has granted VF's motion to dismiss all claims against it for lack of personal jurisdiction, its motion to dismiss the Vincis' individual claims on the basis of pleading deficiencies is DENIED AS MOOT.

The Vincis' personal claims against VF Outdoor, however, have not been dismissed. They assert claims for breach of contract (Count I); promissory estoppel (Count II); breach of the implied covenant of good faith and fair dealing (Count III); and fraudulent nondisclosure (Count IV).

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), Plaintiffs' Amended Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The sufficiency of Plaintiffs' Amended Complaint under Fed. R. Civ. P. 12 is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context specific, requiring the court "to draw on its judicial experience and common sense." *Id.*

### 1. The Vincis' Breach of Contract and Implied Covenant of Good Faith and Fair Dealing Claims.

Counts I and III of the Amended Complaint allege breach of contract and breach of the implied covenant of good faith and fair dealing. VF Outdoor argues that the Vincis, in their personal capacity, have not alleged any contractual relationship between it and them or any promises made to them as private individuals. They further point out that, in many instances, the Vincis fail to differentiate their personal claims from those belonging to TNF.

Under Vermont law, a claim for breach of contract requires the Vincis to establish a contract with VF Outdoor, a breach of that contract, and resulting damages. *See Lapoint v. Dumont Constr. Co.*, 258 A.2d 570, 571 (Vt. 1969). "Entities generally cannot be sued for breaching a contract to which they are not a party." *One Source Envtl., LLC v. M + W Zander, Inc.*, 13 F. Supp. 3d 350, 362 (D. Vt. 2014).

Similarly, the implied covenant of good faith and fair dealing "arises solely because of the presence of the . . . contract[.]" *Greene v. Stevens Gas Serv.*, 2004 VT 67, ¶ 25, 177 Vt. 90, 101, 858 A.2d 238, 247. Therefore, "[a] cause of action for breach of the covenant of good faith can arise only upon a showing that there is an underlying contractual relationship between the parties[.]" *Monahan v. GMAC Mortg. Corp.*, 2005 VT 110, ¶ 54, 179 Vt. 167, 187, 893 A.2d 298, 316 n.5.

The Vincis' allegations in their individual capacities in the Amended Complaint do not state a claim for breach of contract or the implied covenant of good faith because they make only generalized allegations of a "course of dealing," without identifying a contractual obligation breached by VF Outdoor. Their factual allegations therefore do not "plausibly give rise to an entitlement to relief[,]" but rather amount to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678-79.

As the Vincis correctly state, "a wrong involving a contractual right of the shareholder that exists independently of any right of the corporation" can give shareholders direct standing to sue in their own names. *Bovee v. Lyndonville Sav. Bank & Tr. Co.*, 811 A.2d 143, 145-46 (Vt. 2002). The Vincis contend that because they executed personal guaranties to satisfy TNF's obligations to VF Outdoor, there is a contract between VF Outdoor and themselves, or in the alternative that they have standing to sue on behalf of TNF. This argument is unavailing, however, because the Amended Complaint is bereft of any allegations regarding personal guarantees, nor do the Vincis attach the personal guarantees to the Amended Complaint. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("In considering a motion under Fed. R. Civ. P. 12(b)(6) to dismiss a complaint for failure to state a claim on which relief can be granted, the district court is normally required to look only to the allegations on the face of the complaint."); *see also Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000) ("a district court errs when it considers . . . allegations contained in legal briefs or memoranda[.]") (internal citation, alteration, and quotation marks omitted). As a result,

the Amended Complaint provides no basis for the Vincis to pursue breach of contract or implied contract claims based on the Vincis' personal guarantees.

Absent more detailed factual allegations establishing a contract between the Vincis personally and VF Outdoor, the Vincis' claims for breach of contract and breach of the implied covenant of good faith (Counts I and III) are DISMISSED WITHOUT PREJUDICE. *See Elias*, 872 F.3d at 104 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotation marks omitted).

### 2. The Vincis' Promissory Estoppel Claim.

The Vincis' promissory estoppel claim in Count II presents a closer question. Under Vermont law, a claim of promissory estoppel requires proof that: "(1) defendant made a promise to the plaintiff; (2) that the defendant should have reasonably expected that the promise would induce action or inaction by the plaintiff; (3) that the promise actually did induce action or inaction; and (4) that justice requires enforcement of the promise." *Cressy v. Proctor*, 2015 WL 4665533, at *8 (D. Vt. Aug. 6, 2015) (citing *Tour Costa Rica v. Country Walkers, Inc.*, 758 A.2d 795, 799-800 (Vt. 2000)). "The action or inaction taken in reliance on the promise [in question] must be of a definite and substantial character." *Tour Costa Rica*, 758 A.2d at 799 (internal quotation marks omitted).

The Amended Complaint alleges that "Defendants" represented to the Vincis that all retailers of The North Face branded apparel would be required to adhere to manufacturer approved pricing plans, and subsequently promised the Vincis that third-party discounters would be "reigned in" after Plaintiffs complained about reduced prices. (Doc. 5 at 4, ¶ 14.) The Amended Complaint also alleges that Vincis relied on these representations to their detriment when placing large orders for The North Face apparel. *See Nelson v. Town of St. Johnsbury Selectboard*, 2015 VT 5, ¶ 56, 198 Vt. 277, 301, 115 A.3d 423, 439 ("[a] promise is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made") (internal quotation marks omitted).

While VF Outdoor is correct that the Amended Complaint refers to Plaintiffs generally and not the Vincis as individuals, the court is required to draw "all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Taking their well-pled factual allegations as true, the Amended Complaint plausibly alleges that the Vincis, in their individual capacities, relied on VF Outdoor's representations when they "invested their life savings in the store, and devoted their full time to expanding the brand's popularity with Vermont consumers." (Doc. 5 at 3, ¶ 10.) As the sole owners of TNF, it was reasonable for them to believe these promises extended not only to their company but to themselves, especially after the Vincis brought their concerns to VF Outdoor's attention and were promised that third-party discounters would be "reigned in." *Id.* at 4, ¶ 14. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard has been satisfied. VF Outdoor's motion to dismiss the Vincis' personal claims as to Count II is therefore DENIED.

C. **Defendants' Motion to Dismiss the Vincis' Claims in their Individual Capacities Under Fed. R. Civ. P. 9(b) for Failure to Plead Fraud with Particularity.**

Count IV of the Amended Complaint alleges fraudulent nondisclosure by "defendants" generally. As the court has dismissed all claims against VF, only the fraudulent nondisclosure allegations against VF Outdoor must be addressed. Under Vermont law, a party is liable for fraudulent nondisclosure if it has a duty to disclose information and fails "to disclose a material fact coupled with an intention to mislead or defraud[.]" *Sugarline Assocs. v. Alpen Assocs.*, 586 A.2d 1115, 1119 (Vt. 1990). "While there is no general duty to disclose facts absent inquiry," the Vermont Supreme Court "has consistently held that liability for nondisclosure will arise when there is some duty, legal or equitable, arising from the relations of the parties, such as that of trust or confidence, or superior knowledge or means of knowledge." *White v. Pepin*, 561 A.2d 94, 96 (Vt. 1989) (internal quotation marks omitted).

VF Outdoor contends that the Vincis' claims fail to plead with particularity the basis for their fraudulent nondisclosure claim and seeks dismissal on that basis pursuant to Fed. R. Civ. P. 9(b). In ruling on a motion to dismiss under Rule 9(b), the court accepts Plaintiffs' well-pled factual allegations as true, *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017), and applies a four part test to determine whether Plaintiffs' fraud claims are sufficiently particularized. *See United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127-28 (2d Cir. 1994). First, the complaint must "specify the statements that the plaintiff contends were fraudulent[.]" *Chorches*, 865 F.3d at 81. Second, Plaintiffs must "identify the speaker[.]" *Id.* Third, Plaintiffs must "state where and when the statements were made[.]" *Id.* And fourth, Plaintiffs must "explain why the statements were fraudulent." *Id.*

"[A]llegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990). Where this "relaxed" standard is invoked, however, the "complaint must adduce specific facts supporting a strong inference of fraud[.]" *Id.* If malice or some other form of mens rea is required to support a claim for fraud, those allegations "may be averred generally" although a plaintiff is still required to "plead the factual basis which gives rise to a strong inference of fraudulent intent." *Id.* (internal quotation marks omitted).

VF Outdoor argues that the Vincis' fraudulent nondisclosure claims fail to meet these requirements. First, it argues that the allegations are not specific as to the circumstances of the fraud, pointing only to a pricing policy that was changed at some point without Plaintiffs' consultation. VF Outdoor also points out that Plaintiffs fail to state precisely how the policy was changed, a duty to disclose that change, and why the change constitutes fraud. VF Outdoor contends that these general allegations are insufficient to put them on notice. It maintains that its superior knowledge regarding its pricing policies, without more, is insufficient to establish a legal or equitable duty to disclose any changes to those policies to the Vincis. VF Outdoor further argues that even

15

if it owed a duty which it breached, the Amended Complaint does not plead facts giving rise to a plausible inference of fraudulent intent.

Accepting the well-pled factual allegations of the Amended Complaint as true, the Vincis plausibly allege that VF Outdoor deliberately withheld its plans to reduce its wholesale prices in 2016, after the Vincis complained about the practice in 2015 and VF Outdoor promised that third-party discounters would be "reigned in." (Doc. 5 at 4, ¶ 14.) These allegations "identify the speaker," *Chorches*, 865 F.3d at 81, as well as identify the information that should have been disclosed and why it was fraudulent to conceal it.

The Vincis also plausibly allege, at the pleading stage, that the nature of their course of dealings and their known reliance on them gave rise to VF Outdoor's duty to inform them of a pricing policy change before they again made a substantial investment in The North Face branded products in 2016. *See White*, 561 A.2d at 96 ("liability for nondisclosure will arise when there is some duty, legal or equitable, *arising from the relations of the parties*") (emphasis supplied) (internal quotation marks omitted). A duty to disclose is present even in an ordinary business transaction "where material facts are accessible to the vendor only, and he knows them not to be within the reach of the diligent attention, observation and judgment of the purchaser." *Silva v. Stevens*, 589 A.2d 852, 857-58 (Vt. 1991) (internal alteration and quotation marks omitted). This aptly describes the alleged 2016 price reductions, which occurred after the Vincis allege they complained to VF Outdoor about 2015 price reductions. These complaints put VF Outdoor on notice of the Vincis' need to know pricing information which was exclusively within VF Outdoor's knowledge and control.

Finally, when the circumstances "give[] rise to a strong inference of fraudulent intent[,]" mens rea elements "may be averred generally." *Wexner*, 902 F.2d at 172 (internal quotation marks omitted). In this case, the Amended Complaint alleges that:

> Defendants intended to mislead or defraud Plaintiffs so as to recapture the lucrative direct to purchaser sales that Plaintiffs maintained, not only through Plaintiffs' Church Street store but also through their website. As of early 2015, Defendants' own website had taken hold of a portion of the market, and Plaintiffs' website was competing with Defendants' website for

sales. Defendants were able to effectively destroy Plaintiffs' Internet business by underselling to competing retailers, to Defendants' own benefit.

(Doc. 5 at 8, ¶ 41.) These circumstances, with reasonable inferences drawn in the Vincis' favor, "alleg[e] facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness" and give rise to a sufficient inference of fraudulent intent at the pleading stage to justify generalized mens rea allegations. *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996).

Because the Amended Complaint plausibly alleges that VF Outdoor deliberately withheld its plans to reduce wholesale prices in an effort to induce the Vincis' to continue to invest in The North Face branded products to their detriment, at the pleading stage, its allegations are sufficient to put VF Outdoor on notice of the nature of the Vincis' suit and the conduct they allege was fraudulent. *See Exelis*, 824 F.3d at 25 (noting that Fed. R. Civ. P. 9 exists "to provide a defendant with fair notice of a plaintiff's claim[.]"). VF Outdoor's motion to dismiss the Vincis' claims in Count IV for fraudulent nondisclosure is therefore DENIED.

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendant V.F. Corp.'s motion to dismiss for lack of personal jurisdiction (Doc. 10). V.F. Corp.'s motion to dismiss the Vincis' claims in their individual capacities is therefore DENIED AS MOOT (Doc. 11). Plaintiffs' request to conduct jurisdictional discovery is GRANTED IN PART and DENIED IN PART. VF Outdoor, LLC's motion to dismiss the Vincis' individual claims against it is GRANTED IN PART and DENIED IN PART (Doc. 11): Counts I and III are DISMISSED WITHOUT PREJUDICE; VF Outdoor, LLC's motion is DENIED with respect to the Vincis' individual claims against it in Counts II and IV.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 21st day of February, 2018.

Christina Reiss, District Judge
United States District Court