U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 JUL 10 PM 1: 17

CLERK

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

WILLIAM VINCI, LINDA VINCI,            )
                                       )
        Plaintiffs,                    )
                                       )
        v.                             )        Case No. 2:17-cv-00091
                                       )
VF OUTDOOR, LLC,                       )
                                       )
        Defendant.                     )

## OPINION AND ORDER GRANTING
## DEFENDANT VF OUTDOOR, LLC'S MOTION TO TRANSFER VENUE
(Doc. 36)

Plaintiffs William and Linda Vinci (the "Vincis") bring state law claims against Defendant VF Outdoor, LLC ("VF Outdoor"), arising out of the Vincis' purchases of The North Face branded products subject to a Multiparty Guaranty Agreement ("the Agreement"). Pending before the court is VF Outdoor's motion to transfer the Vincis' remaining claims to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a). The Vincis oppose the motion, which the court took under advisement on May 31, 2018.

Plaintiffs are represented by David E. Bond, Esq. Defendants are represented by R. Jeffrey Behm, Esq.

## I.    Factual and Procedural Background.

The court adopts as its factual and procedural background the factual allegations set forth in its February 21, 2018 Opinion and Order. *See* Opinion & Order (Doc. 24), Feb. 21, 2018, at 2-4. The Vincis are husband and wife and the sole shareholders of TNF Gear, Inc. ("TNF"), a Vermont corporation with its principal place of business in Burlington, Vermont. In 2001, TNF opened The North Face Store @ KL Sport in Shelburne, Vermont, which was later moved to College Street in Burlington and then to

90 Church Street in Burlington. TNF's store sold only The North Face branded apparel purchased at wholesale from V.F. Corp. and VF Outdoor. Plaintiffs allege that until 2015, "The North Face was positioned as a premium brand[,]" and V.F. Corp. and VF Outdoor required them to adhere to manufacturer approved pricing plans that dictated correspondingly high retail prices. (Doc. 5 at 3, ¶ 11.) The Vincis allege that the two companies "represented to Plaintiffs that these policies applied to all retailers selling The North Face products." *Id.* at ¶ 9.

In early 2015, TNF placed its yearly order for winter apparel, totaling approximately $1.2 million in merchandise. In the fall of 2015, after TNF accepted delivery of those products, V.F. Corp. and VF Outdoor allegedly dramatically reduced their wholesale prices for sales made to third-party vendors. These third-party vendors, in turn, sold the discounted merchandise at significantly reduced retail prices to the general public, in violation of the marketing policies with which V.F. Corp. and VF Outdoor required TNF and the Vincis to comply. The Vincis claim that they were unable to compete with the significantly reduced prices, and that even if they could match them, they were barred from doing so pursuant to their promise to adhere to Defendants' manufacturer approved pricing plans. The Vincis allege that they fell "deeply into debt[,]" *id.*, ¶ 13, and reported this to their contacts at the two companies who promised to "reign[] in" the third-party discounters. *Id.* at 4, ¶ 14.

In 2016, the Vincis purchased $650,000 in winter apparel inventory through TNF, and in the fall of that year V.F. Corp. and VF Outdoor again allegedly offered the same apparel to third-party vendors at steep discounts. The Vincis allege that they were again substantially underpriced by other retailers and were unable to maintain profitability. "As a result of Defendants' actions, the Vincis exhausted their savings and their credit, and in under 20 months saw their business go from a successful enterprise to the verge of failure." *Id.*, ¶ 17. The Vincis claim they offered to sell their business to V.F. Corp. and VF Outdoor, but that they refused to entertain a fair market value purchase.

On May 23, 2017, the Vincis and TNF filed a Complaint naming only V.F. Corp. as a Defendant and alleging breach of contract, promissory estoppel, breach of the

2

implied covenant of good faith and fair dealing, and fraudulent nondisclosure under Vermont common law. On June 19, 2017, the Vincis and TNF amended their Complaint to include VF Outdoor as a Defendant, stating that VF Outdoor "is a wholly-owned subsidiary of [V. F. Corp.]. On information and belief, [VF Outdoor] is the owner of The North Face brand, and operates a division under the tradename, 'The North Face.'" *Id.* at 1, ¶ 4. The Amended Complaint includes a jury demand and seeks five million dollars in damages.

On July 18, 2017, VF Outdoor and V.F. Corp. filed three motions pursuant to Fed. R. Civ. P. 12. First, VF Outdoor moved to enforce a binding forum selection clause in the Agreement with TNF, arguing in the alternative either for dismissal of the Vermont action or transfer of the case to the United States District Court for the Northern District of California. On January 12, 2018, the court granted VF Outdoor's motion and transferred TNF's claims against it to the Northern District of California. Those claims are presently pending in that court's San Francisco Division in Civil Docket No. 18-cv-00253-JSC.[1]

Second, V.F. Corp. sought dismissal of all Plaintiffs' claims against it for lack of personal jurisdiction. On February 21, 2018, the court granted V.F. Corp.'s motion, dismissed all claims against it, and dismissed it as a party to this action. TNF was subsequently dismissed as a party because, following transfer of its claims against VF Outdoor and dismissal of its claims against V.F. Corp., none of TNF's claims remained pending in this court.

---

[1] VF Outdoor has included copies of its pleadings in the California action as attachments to its motion to transfer. The court may consider materials outside the pleadings in ruling on a motion to transfer. *See, e.g., Citibank, N.A. v. Affinity Processing Corp.*, 248 F. Supp. 2d 172, 176 (E.D.N.Y. 2003) (citing *Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F. Supp. 62, 66 (S.D.N.Y. 1993)). Pursuant to Fed. R. Evid. 201(c)(1), the court also takes judicial notice of the civil docket sheet in the California action, which reflects a pending case as of July 9, 2018. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("docket sheets are public records of which the court [can] take judicial notice"). The parties have fourteen (14) days from the date of this Opinion and Order to establish why judicial notice is inappropriate. *See* Fed. R. Evid. 201(e).

Third, both V.F. Corp. and VF Outdoor sought dismissal of the Vincis' individual causes of action for failure to state a claim upon which relief could be granted. Having determined that it lacked personal jurisdiction over V.F. Corp., the court denied V.F. Corp.'s motion as moot. VF Outdoor's motion was thus granted in part and denied in part. The court dismissed Counts I and III without prejudice, which alleged breach of contract and breach of the implied covenant of good faith and fair dealing, but denied VF Outdoor's motion with respect to Counts II and IV, which pleaded claims of promissory estoppel and fraudulent nondisclosure. As a result, the Vincis' state law claims against VF Outdoor for promissory estoppel and fraudulent nondisclosure are the only claims that remain pending in this court. VF Outdoor seeks transfer of those claims to the Northern District of California so that all of the claims arising out of the sale of The North Face Branded products to TNF and the Vincis may be tried in a single action. The Vincis oppose that outcome.

## II.    Conclusions of Law and Analysis.

28 U.S.C. § 1404 governs VF Outdoor's motion to transfer and states that: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Texas*, 571 U.S. 49, 60 (2013). It "reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (footnote omitted).

As the Supreme Court has observed, § 1404 "was designed as a federal housekeeping measure, allowing easy change of venue within a unified federal system." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981) (internal quotation marks omitted). Therefore, "[d]istrict courts [are] given more discretion to transfer under § 1404(a) than

they [have] to dismiss on grounds of *forum non conveniens*[,]" *id.*, and "motions for transfer . . . are determined upon notions of convenience and fairness on a case-by-case basis." *Cuyahoga Equip. Corp. v. United States (In re: Cuyahoga Equip. Corp.)*, 980 F.2d 110, 117 (2d Cir. 1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

Where no forum selection clause governs the parties' dispute, "a district court considering a § 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine*, 571 U.S. at 62.

> Factors relating to the parties' private interests include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law. The [c]ourt must also give some weight to the plaintiffs' choice of forum.

*Id.* at 62 n.6 (internal citations, alterations, and quotation marks omitted).[2] Where a forum selection clause governs the dispute, it should be "given controlling weight in all but the most exceptional cases." *Id.* at 63 (internal quotation marks omitted). It is the moving party's burden to prove by clear and convincing evidence that a transfer is proper under § 1404(a). *See N.Y. Marine & Gen. Ins. Co. v. Lafarge N.A., Inc.*, 599 F.3d 102, 113-14 (2d Cir. 2010).

## A.    Whether a Forum Selection Clause Applies.

VF Outdoor contends that the forum selection clause in its Agreement with TNF, which requires disputes to be litigated in California, applies to the Vincis' remaining

---

[2] The Second Circuit has articulated the relevant factors as follows: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N.A., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (internal quotation marks omitted).

5

claims and therefore requires their transfer. Although VF Outdoor concedes that the Vincis are not signatories to the Agreement, it contends that their claims are nonetheless subject to it under the "closely related doctrine." (Doc. 36 at 6) (internal quotation marks omitted). The Vincis oppose the application of the forum selection clause to them, arguing that it is unfair to deprive them of the right to enforce the Agreement and then turn around and enforce a promise of it against them. They further assert that the forum selection clause's application to claims arising from their "pouring money into their business in an attempt[] to keep it afloat" is not reasonably foreseeable. (Doc. 37 at 4.)

VF Outdoor is correct "that the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009). For example, where a non-signatory party is a "successor in interest" to a party which agreed to a forum selection clause, the clause is generally enforceable against the non-signatory successor. *Id.* Although the Vincis' status as non-signatories to the Agreement makes refusal to enforce the Agreement's forum selection clause against them appealing in terms of fairness, it ignores the overlay of federal law. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014) ("The overriding framework governing the effect of forum selection clauses in federal courts . . . is drawn from federal law.").

> The federal judicial system has a strong interest in the correct resolution of these questions, not only to spare litigants unnecessary costs but also to relieve courts of time-consuming pretrial motions. Courts should announce and encourage rules that support private parties who negotiate such clauses. Though state policies should be weighed in the balance, the authority and prerogative of the federal courts to determine the issue, as Congress has directed by § 1404(a), should be exercised so that a valid forum-selection clause is given controlling weight in all but the most exceptional cases.

*Richo*, 487 U.S. at 33 (Kennedy, J., concurring) (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). In light of these policy considerations, the federal system's willingness to enforce forum selection clauses against closely related non-signatories which could reasonably foresee such enforcement is not incompatible with the state law requirement that a party be a signatory to a contract to enforce its terms.

6

The Second Circuit has cited with approval decisions from other Circuits which conclude that a non-signatory may be subject to a forum selection clause where a "larger contractual relationship" includes both signatories and non-signatories,[3] where the party seeking to avoid the forum selection clause is a "third-party beneficiary" of the contract containing it,[4] and where a non-signatory plaintiff is "'closely related' to the disputes arising out of the agreement[]" and "voluntar[ily]" joins with other plaintiffs who *are* bound by the forum selection clause.[5] *See Aguas Lenders*, 585 F.3d at 701.

District courts applying the "closely related" doctrine in the Second Circuit have focused on whether enforcement of a forum selection clause was "foreseeable" to the non-signatory plaintiff.[6] Where a non-signatory party serves as a corporate officer or principal of a corporate party bound by the terms of a forum selection clause, and the non-signatory party's claims arise out of that party's "close business relationship" with the signatory party, the enforcement of the forum selection clause is generally deemed foreseeable. *See Power UP Lending Grp., Ltd. v. Murphy*, 2016 WL 6088332, at \*7 (E.D.N.Y. Oct. 18, 2016) (internal quotation marks omitted) (collecting cases).

---

[3] *See Holland Am. Line, Inc. v. Wartsila N.A., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007).

[4] *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 195 (3d Cir. 2001); *TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990).

[5] *See Marano Enter. of Kan. v. Z-Teca Rests., L.P.*, 254 F.3d 753, 757-58 (8th Cir. 2001) (quoting *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)).

[6] *See Power UP Lending Grp., Ltd. v. Murphy*, 2016 WL 6088332, at \*6 (E.D.N.Y. Oct. 18, 2016) ("a valid forum selection clause may be enforced against a non-signatory who is so closely-related to the actual signatories or the dispute that enforcement of the forum selection clause against it is reasonably foreseeable.") (internal quotation marks omitted); *Recurrent Capital Bridge Fund I, LLC v. ISR Sys. & Sensors Corp.*, 875 F. Supp. 2d 297, 307-08 (S.D.N.Y. 2012) ("Regardless of the specific application, the enforcement of the forum selection clause against the non-party must have been foreseeable prior to suit"); *In re Lloyd's Am. Tr. Fund Litig.*, 954 F. Supp. 656, 670 (S.D.N.Y. 1997) ("The relationship between the non-party and the signatory must be sufficiently close so that the non-party's enforcement of the forum selection clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound.") (internal quotation marks omitted).

7

The Vincis' second argument, whether enforcement of the clause was reasonably foreseeable to them, presents a closer question. In the Second Circuit, the enforceability of a forum selection clause is governed by a four part test: (1) "whether the clause was reasonably communicated to the party resisting enforcement"; (2) whether the clause is "mandatory or permissive"; (3) "whether the claims and parties involved in the suit are subject to the forum selection clause"; and (4) whether "enforcement would be unreasonable or unjust, or that the clause was invalid[.]" *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007) (citations omitted).

In this case, the Vincis are connected to the Agreement between TNF and VF Outdoor because of their status as TNF's sole shareholders. In addition, Mr. Vinci signed the Agreement on TNF's behalf in his capacity as president. The Vincis then voluntarily joined their claims with a closely related entity which they knew or should reasonably have known was subject to a forum selection clause. Based on the totality of the circumstances, there is little doubt that the Vincis are closely related to TNF.

The Vincis' claims, however, are not for breach of contract but are instead for promissory estoppel and fraudulent nondisclosure. The issue is thus whether the scope of the forum selection clause is broad enough to encompass those claims.

The forum selection clause states:

CONSENT TO JURISDICTION. Each of the Beneficiary and the Guarantors irrevocably agrees that any legal action or proceeding with respect to this Guaranty, the Business Arrangement, any Alternative Arrangement or any agreements, documents or instruments delivered in connection herewith or therewith shall be brought in the courts of the State of California, County of Alameda or the United States of America for the Northern District of California, Oakland Division, as the Beneficiary may elect, and, by execution and delivery hereof, each Guarantor accepts and consents to, for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts and agrees that such jurisdiction shall be exclusive, unless waived by the Beneficiary in writing, with respect to any action or proceeding brought by any or all of the Guarantors against the Beneficiary. Each Guarantor hereby waives, to the full extent permitted by law, any right to stay or to dismiss any action or proceeding brought before said courts on the basis of *forum non conveniens*.

(Doc. 9-3 at 6.) The Agreement further defines the "Business Arrangement" as follows:

North Face [identified as "a division of VF Outdoor, Inc."] has been selling goods and related products and services (hereinafter collectively referred to as "Goods") and may continue to sell Goods to or for the benefit of all the Guarantors [identified as "TNF Gear Inc." and another company controlled by the Vincis], but for purposes of administrative convenience and pursuant to the request of the Guarantors, North Face has been shipping such Goods and billing for such Goods to or through the Company [identified as "TNF Gear Inc."] (hereinafter, this arrangement shall be referred to as the "Business Arrangement").

*Id.* at 1. "Alternative Arrangement(s)" are defined as "any alternative business arrangement whereby North Face may sell Goods to or for the benefit of any of the Guarantors[.]" *Id.*

The forum selection clause is cast in mandatory language that encompasses any litigation arising out of the sale of The North Face branded products to TNF, any third party acting for TNF's benefit, or any related collateral agreement, document, or arrangement. This language sweeps broadly to include the Vincis' promissory estoppel claim which is based on allegations that VF Outdoor "represented to the Vincis that all retailers of The North Face branded apparel would be required to adhere to manufacturer approved pricing plans, and subsequently promised the Vincis that third-party discounters would be reigned in after Plaintiffs complained about reduced prices." Opinion & Order, Feb. 21, 2018 (Doc. 24), at 13. It similarly reaches the Vincis' fraudulent nondisclosure claim which is based on their course of dealing with VF Outdoor and allegations "that VF Outdoor deliberately withheld its plans to reduce its wholesale prices in 2016, after the Vincis complained about the practice in 2015 and VF Outdoor promised that third-party discounters would be reigned in." *Id.* at 16. Both of these claims derive from the sale of The North Face branded products to TNF and are thus included within the Business Arrangement or the Alternative Arrangement(s) as defined in the Agreement. In light of the Vincis' close relationship with TNF as its officers and sole shareholders, they may be deemed to have foreseen the applicability of the forum selection clause to their remaining claims in this lawsuit.

9

In addition, because the forum selection clause was "plainly printed" in the Agreement and Mr. Vinci signed it in his capacity as president of TNF, the Vincis received constructive notice that they would be bound by it. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) (observing that neither party disputed whether a forum selection clause was "reasonably communicated" where it was "plainly printed" in the governing agreements). Because this "mandatory" clause was "reasonably communicated" to parties whose claims are "subject" to its provisions, it is presumptively enforceable, absent a showing of unreasonableness or injustice. *See Martinez*, 740 F.3d at 211.

When a forum selection clause is presumptively enforceable, "the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine*, 571 U.S. at 63. Similarly, the court "should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 64. Against this backdrop, Plaintiffs have not demonstrated that enforcement of the forum selection clause would be unjust or that the circumstances are sufficiently "exceptional" to merit disregarding it. *Id.* at 62. The disparity in the parties' economic means is not enough to retain jurisdiction especially when the Vincis are already litigating in the Northern District of California.

**B.      Whether the Vincis' Claims Should be Transferred Under a Traditional § 1404(a) Analysis.**

Even if the Vincis' remaining claims were not subject to the Agreement's forum selection clause, the totality of the circumstances merit a transfer to the United States District Court for the Northern District of California by clear and convincing evidence. As a threshold issue, venue is proper in the Northern District of California because it is both "a judicial district in which [the] defendant resides" and "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" 28

10

U.S.C. § 1391(b). As a result, the pending case "might have been brought" in the Northern District of California and transfer under § 1404(a) is permissible. *See Van Dusen*, 376 U.S. at 623 ("There is no valid reason for reading the words 'where it might have been brought' to narrow the range of permissible federal forums beyond those permitted by federal venue statutes") (quoting 28 U.S.C. § 1404(a)).

With regard to the factors governing a § 1404 transfer, the Vincis' choice of forum is entitled to some weight. *See N.Y. Marine*, 599 F.3d at 112 ("Among the factors to be considered in determining whether to grant a motion to transfer venue" is "the plaintiff's choice of forum"). The court's prior transfer of several related claims, arising out of the same operative facts, however, is a compelling countervailing consideration weighing heavily in favor of the transfer of the Vincis' remaining causes of action. *See, e.g., APA Excelsior III L.P. v. Premiere Techs., Inc.*, 49 F. Supp. 2d 664, 668 (S.D.N.Y. 1999) ("It is well established that the existence of a related action pending in the transferee court weighs heavily towards transfer.") (collecting cases).

Consolidation in the Northern District of California will be more efficient and cost effective for all involved, as opposed to pursuing parallel actions involving many of the same witnesses and documents in two different courts on opposite sides of the country. *See Durham Prods., Inc. v. Sterling Film Portfolio, Ltd., Series A*, 537 F. Supp. 1241, 1244 (S.D.N.Y. 1982) (observing that transfer to Georgia where "five related cases" were pending "would pose no great burden . . . and would in fact avoid much duplicative litigation."). Indeed, the Vincis are named as counterclaim-Defendants in VF Outdoor's Answer to TNF's Complaint in the transferred action pending in the Northern District of California and will necessarily be involved in Californian litigation. Assuming arguendo that the Vincis' remaining claims will be consolidated with the related matters pending in California, transfer will lead to more streamlined and cost-effective discovery and presumably more expeditious resolution.

VF Outdoor further points out, as an Alameda, California based company, the vast majority of its fact witnesses reside in California and will be substantially inconvenienced if they must appear in Vermont as part of this litigation. In light of the nature of the

Vincis' claims, VF Outdoor's witnesses are likely to exceed the Vincis' and this factor must also weigh in VF Outdoor's favor.[7] In the event that the Vincis wish to subpoena witness to appear at trial to testify, they will not be able to do so for any non-party witness who does not live or work within one hundred miles of Burlington, Vermont or any party witness who lives outside of the state. *See* Fed. R. Civ. P. 45(c)(1) ("A subpoena may command a person to attend a trial, hearing, or deposition only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is a party"). Because the majority of VF Outdoor's employees reside and work in California, such process is unavailable in the District of Vermont. In light of these considerations, both "the convenience of the parties and witnesses" and "the interest of justice" are best served by a transfer. *N.Y. Marine*, 599 F.3d at 112.

## CONCLUSION

For the foregoing reasons, VF Outdoor, LLC's motion to transfer venue to the United States District Court for the Northern District California (Doc. 36) is GRANTED and the Vincis' claims are hereby TRANSFERRED to that court.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 10th day of July, 2018.

Christina Reiss, District Judge
United States District Court

---

[7] Moreover, under Fed. R. Civ. P. 45(c)(1)(A), Defendant cannot subpoena non-party witnesses to appear for a deposition more than one hundred miles from their home or place of business, which may require it to invest time and resources traveling to Vermont to conduct a pre-trial depositions if any are required. The same is true of non-party witnesses the Vincis seek to depose. *See id.*